MEMORANDUM **
Jason Ernst appeals the district court’s judgment affirming the denial of his appli *476 cations for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291. We review the administrative law judge (“ALJ”)’s decision for substantial evidence. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir.2012). We vacate and remand for reconsideration.
Ernst is thirty years old. He has been developmentally delayed his entire life, likely as a result of fetal alcohol syndrome. He graduated from an “extended” high school program in 2004, at age twenty. While in high school, he enrolled in a local employment support program, through which he bagged groceries and mopped bathrooms at Safeway. He was fired in 2006 because he had trouble following instructions and remembering to show up for work. Over the next two years, Ernst was hired at, and subsequently fired from, at least five jobs, never remaining em- • ployed for more than three months. In one of these jobs, he worked briefly and unsuccessfully as a janitor. His employers found he could not perform tasks quickly enough, and often forgot simple instructions. As he put it during his disability hearing, “[N]o matter how hard I would try, I’d always be behind.”
Ernst applied for disability benefits in 2009. In connection with his application, Ernst was evaluated by two psychologists, Michael Boltwood and Norma Brown. Both doctors concluded that Ernst was very slow in processing information and performing tasks. Both doctors tested his cognitive processing; his performance was below the tenth percentile. Dr. Boltwood gave him a Wechsler Adult Intelligence. Scale (WAIS) test, and found that his “full scale” IQ was below the seventh percentile. His “working memory” and “processing speed” scores fell below the third and fourth percentiles. Dr. Boltwood nonetheless concluded that Ernst could find and keep employment, based on “his demonstrated ability to find work in the past.” Dr. Brown concluded that Ernst could not: “He will likely need to work, if he does, in a sheltered work environment which provides for one-to-one supervision.”
In 2009, the state agency denied Ernst’s application for disability benefits, and he requested a hearing before an ALJ. At the hearing, the ALJ took testimony from Ernst and a vocational expert. In January 2011, the ALJ denied Ernst’s claim for benefits. He gave “significant weight” to Dr. Boltwood’s opinion that Ernst could “sustain gainful employment in spite of his cognitive limitations” and “little weight” to Dr. Brown’s opinion that Ernst would need to work in a sheltered work environment. He noted that Dr. Brown did not review Ernst’s IQ scores and “did not adequately consider the fact that the claimant worked successfully at Safeway.” He further concluded, on the basis of the vocational expert’s testimony, that Ernst could likely find sustained work as a janitor, a production assembler, or as a hand packager.
Ernst argues that the ALJ failed to consider whether he is capable of working on a sustained basis outside of “sheltered” environments. See Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir.1988). We agree. The weight of the evidence suggests that Ernst has never held a job for any sustained period outside of sheltered environments. The only job that Ernst held for more than four months was his job as a courtesy clerk at Safeway, which he obtained through a supported employment program. The ALJ relied on Dr. Bolt-wood’s conclusion that Ernst could “sustain gainful employment in spite of his cognitive limitations” based on Ernst’s “demonstrated ability to find work in the past.” But “substantial gainful activity means more than merely the ability to find a job and physically perform it; it also *477 requires the ability to hold the job for a significant period of time.” Gatliff v. Comm’r of Soc. Sec. Admin., 172 F.3d 690, 694 (9th Cir.1999). Here, while Ernst has been able to find work, he has never been able to keep it: he has quickly lost every non-sheltered job he has ever had because his employers find he is incapable of following instructions and works too slowly. The ALJ made no mention of this evidence.
The ALJ improperly discounted the opinion of Dr. Brown that Ernst was incapable of performing competitive work on a sustained basis. When two doctors disagree, an ALJ is entitled to reject one doctor’s opinion only on the basis of “specific and legitimate reasons.” Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.2005). Here, Dr. Brown concluded that Ernst could work on a sustained basis, if at all, only in a sheltered environment. The ALJ gave “little weight” to her opinion, concluding that it was “inconsistent with the medical record as a whole.” The ALJ noted in particular that Dr. Brown had not had the “opportunity to review [Ernst’s] 2009 WAIS-III test scores.” It is true that Dr. Brown did not perform a WAIS test, and she appears not to have seen the results of the WAIS test performed by Dr. Boltwood. But if Dr. Brown had seen the result of Dr. Bolt-wood’s WAIS test, she would have discovered that Ernst’s “processing speed” was in the fourth percentile, and that his “working memory” was in the third percentile. Far from undermining Dr. Brown’s opinion, these scores would have strongly supported it. The only remaining distinction between the psychologists’ assessments is that Dr. Boltwood did not consider — and may not have been aware of — the evidence that Ernst had never been able to keep a job in a non-sheltered environment. The ALJ therefore lacked “specific and legitimate reasons” to credit Dr. Boltwood’s opinion over Dr. Brown’s.
Because the ALJ failed to consider whether Ernst is capable of performing sustained competitive work outside of sheltered environments, we VACATE and REMAND for reconsideration of Ernst’s application for benefits. The parties shall bear their own costs on appeal.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.